**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **Crim. No. 00-291-02** |
| **ADAM BENTLEY CLAUSEN** | : | |

**GOVERNMENT'S RESPONSE TO MOTION FOR
COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)(i)**

Defendant Adam Bentley Clausen seeks compassionate release, under 18 U.S.C. § 3582(c)(1)(A)(i), based on the length of sentences he is serving that would not be imposed under current law. He also highlights his commendable rehabilitation during two decades he has spent in prison. While we commend his efforts in custody, and do not deny the possibility that either Congress or a President will one day afford Clausen relief based on the considerations he presents, we are compelled to explain that relief under the compassionate release statute is not available here as a matter of law.

What Clausen seeks would sweep far beyond this case: essentially, the restoration of a parole power, which was eliminated in the Sentencing Reform Act of 1984, but which he asserts should be extended to the judiciary to permit revision of a final sentence at any time based on a judge's reassessment of the proper length of the term. This request is not supported by law and should be denied.

## I.    Background.

On May 24, 2000, a grand jury returned an indictment charging Adam

Bentley Clausen and four co-defendants with violations arising out of the armed

robberies or attempted armed robberies of various businesses. Specifically,

Clausen was charged with multiple counts of Hobbs Act robbery and attempted

robbery, violation of 18 U.S.C. § 1951(a); Hobbs Act conspiracy, in violation of the

same statute; and nine counts of using a firearm during and in relation to a crime

of violence, in violation of 18 U.S.C. § 924(c).

The evidence at trial established that between February 7, 2000, and

February 26, 2000, two or more of a group of offenders, including Clausen,

robbed or attempted to rob seven businesses at gunpoint (two more than once):

five massage parlors in Philadelphia, a Philadelphia business engaged in the

scrap metal business, and a restaurant and bar in New Jersey. The robberies were

often violent, though no victim suffered a permanent injury. The facts are

presented in extensive detail in the opinion of Judge Robert F. Kelly, reported at

2005 WL 846198, denying a motion under 28 U.S.C. § 2255.

On December 12, 2000, following a jury trial, Clausen was convicted on all

counts. He was sentenced to 97 months' imprisonment on the Hobbs Act counts

and a mandatory minimum sentence of 205 years to run consecutively to the

Hobbs Act sentence as required by 18 U.S.C. § 924(c)(1). Clausen appealed his

sentence and conviction, which were affirmed, *see United States v. Clausen*, 328

F.3d 708 (3d Cir. 2003), and also presented a timely 2255 motion that was unsuccessful.

On November 18, 2019 (docket no. 267), Clausen presented a motion for compassionate release, to which the Court has now ordered a response.[1]

## II.  Discussion.

The defendant is serving a sentence of more than 213 years that would not be imposed on a current offender. The sentence was grounded on an earlier version of 18 U.S.C. § 924(c), which required a mandatory consecutive 25-year term for each successive 924(c) conviction after the first, even when all offenses were prosecuted in the same case. *See Deal v. United States*, 508 U.S. 129 (1993). Clausen was therefore sentenced to a five-year mandatory term on the first of his 924(c) offenses, and consecutive terms totaling 200 years on the eight additional 924(c) convictions he incurred.

In Section 403 of the First Step Act, effective December 18, 2018, Congress amended Section 924(c) to provide that the 25-year consecutive term for a successive 924(c) offense does not apply unless the defendant had a previous,

---

[1] Also on November 18, 2019 (docket no. 266), Clausen, with permission of the Court of Appeals, filed a successive motion under 28 U.S.C. § 2255 seeking that the 924(c) convictions be vacated on the basis of the decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). This Court has not ordered a response to that motion, likely because the dispositive question – whether Hobbs Act robbery continues to serve as a predicate "crime of violence" under § 924(c) – has been fully briefed and is pending before the Third Circuit in cases such as *United States v. Copes*, No. 19-1494 (Hobbs Act robbery as 924(c) predicate), and *United States v. Walker*, No. 15-4062 (924(c) charge based on attempt to commit Hobbs Act robbery).

final conviction for a 924(c) charge at the time of the offense. Under current law, the defendant would face a five-year sentence on each 924(c) charge, or in this case, more likely seven-year terms for the offenses in which a firearm was brandished, and ten years in those instances where the firearm was discharged. The statutory requirement still applies that each such sentence must run consecutively to each other and to any other sentence imposed. That means the mandatory minimum sentence on nine 924(c) counts, if charged today in the same initial 924(c) prosecution, would be at least 45 years (and likely more in this case).[2]

Based on this phenomenon, Clausen seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which permits a court to reduce a sentence upon a showing of "extraordinary and compelling circumstances." He asserts, "Those extraordinary and compelling reasons are present here because Clausen was

---

[2] *See* First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5222, § 403. Based on this amendment, Section 924(c)(1)(C) now provides: "In the case of a violation of this subsection that occurs after a prior conviction under this subsection has become final, the person shall – (i) be sentenced to a term of imprisonment of not less than 25 years. . . ." The other provisions of Section 924(c), including those requiring a seven-year mandatory minimum term for brandishing a firearm in relation to a crime of violence, and a ten-year sentence for discharge, and directing that each sentence under Section 924(c) must run consecutively to any other sentence imposed, remain unchanged.

As explained in Judge Kelly's detailed recitation of the facts in this case, 2005 WL 846198 at *2-6, there were numerous robberies in which the confederates brandished guns, and at least three in which guns were discharged. Thus, the total likely consecutive sentence in a case like this today would total in excess of 60 years.

given an unusually long sentence under a peculiar statutory provision that Congress has since amended because it was too punitive; he received an effective life sentence as a penalty for exercising his constitutional right to a jury trial; and he has compiled a remarkable record of rehabilitation showing that, if released, he is no danger to the public." Mtn. 5. However, these circumstances as a matter of law do not by themselves allow relief under Section 3582(c)(1)(A)(i), and the motion must be denied.

> **A.   The Pertinent Statute Directs that "Extraordinary and Compelling Circumstances" Allowing Compassionate Release Are Defined by the Sentencing Commission.**

The defendant, in effect, is seeking retroactive application of Section 403 of the First Step Act of 2018, which reduced the penalty for multiple 924(c) violations committed by an offender who had not previously incurred a 924(c) conviction. Actually, in asking for a reduction of his sentence to time served of approximately 20 years, *see* Mtn. 1, he seeks a better result than retroactive application, given that, under the First Step Act, the defendant would still face a mandatory sentence of at least 45 years for his 924(c) convictions.

However, the determination of the retroactivity of a statutory provision is made by Congress. *Dorsey v. United States*, 567 U.S. 260, 274 (2012). In the ordinary course, it is presumed that a change to criminal penalties does not apply retroactively, unless Congress provides otherwise. *Id.* at 272. The controlling statute, 1 U.S.C. § 109, provides: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under

such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

With respect to the change to Section 924(c) adopted in the First Step Act, Congress stated its intent explicitly, providing in Section 403(b): "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act § 403(b). Given that the defendant was sentenced before December 21, 2018, Section 403 does not apply in this case, and the defendant's sentence remains intact. The Third Circuit has so held, *United States v. Hodge*, 948 F.3d 160 (3d Cir. 2020) (holding that § 403 of the Act does not apply retroactively in a case in which a sentence was imposed before the Act was passed, even if another non-924(c) part of the sentence was modified after the passage of the Act), and every other court to address this issue agrees. *See, e.g.*, *United States v. Cruz-Rivera*, 954 F.3d 410 (1st Cir. 2020); *United States v. Jordan*, 952 F.3d 160, 171-74 (4th Cir. 2020); *United States v. Richardson*, 948 F.3d 733, 745-53 (6th Cir. 2020) (on remand from the Supreme Court for consideration of the application of the First Step Act, the court holds that Section 403 does not apply retroactively to a 924(c) sentence imposed before the Act was passed, even if a direct appeal remains pending).

Thus, Congress expressly declined to extend the benefit of the amended Section 924(c) to defendants like Clausen. Nevertheless, the defendant seeks a different result, claiming that the compassionate release authority of Section 3582(c)(1)(A)(i) authorizes what Section 403 of the First Step Act did not. As recently amended by the First Step Act, Section 3582(c)(1)(A)(i) provides:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that--
>
> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

In Section 603(b) of the First Step Act, Congress added the italicized passage that permits a defendant, after denial of a request to BOP that it sponsor a request for compassionate release, or the passage of a specified period of time after seeking BOP's acquiescence, to himself move the court for relief. Previously, only BOP could initiate a motion for compassionate release.

The defendant argues that the changes to 18 U.S.C. § 3582(C)(1)(A)(i) made by the First Step Act have vested this Court with authority to identify the extraordinary and compelling circumstances that may warrant a sentence reduction. Mtn. 15. But that is not true. The First Step Act left unchanged a critical statutory command: any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." Here, the applicable policy statement provides no basis for a sentence reduction based on concern regarding the length of a previously imposed sentence.

As before, Congress has directed the Sentencing Commission to determine the permissible grounds for compassionate release. That directive is expressed in several statutes. Congress directed the Sentencing Commission to adopt policy statements regarding "the appropriate use of . . . the sentence modification provisions set forth in section[] . . . 3582(c) of title 18." 28 U.S.C. § 994(a)(2)(C). Providing further guidance, Section 994(t) states: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." And finally, as stated, Section 3582(c)(1)(A) conditions judicial relief on fidelity to the applicable policy statement, which appears at U.S.S.G. § 1B1.13.

This policy statement is binding under the express terms of Section 3582(c)(1)(A), and because it concerns only possible sentence reductions, not increases, it is not subject to the rule of *Booker v. United States*, 543 U.S. 220 (2005), that any guideline that increases a sentence must be deemed advisory.

This issue was resolved by the Supreme Court in *Dillon v. United States*, 560 U.S. 817 (2010), which the defendant does not address, but makes clear that the statutory requirement in Section 3582 that a court heed the restrictions stated by the Sentencing Commission is binding.

*Dillon* concerned a motion for a reduction in sentence under 18 U.S.C. § 3582(c)(2), which allows a sentence reduction in limited circumstances upon the Commission's adoption of a retroactive guideline amendment lowering a guideline range. That subsection allows such an action "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" – language identical to that which appears in Section 3582(c)(1)(A) with respect to a court's consideration of a motion for compassionate release ("if it finds . . . that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission").

The *Dillon* Court held that the Commission's pertinent policy statement concerning retroactive guideline amendments (U.S.S.G. § 1B1.10) is binding, particularly its directive that a permissible sentence reduction is limited to the bottom of the revised guideline range, without application of the rule of *Booker*. *See Dillon*, 560 U.S. at 826. *Dillon* emphasized that a sentence reduction under

Section 3582(c)(2) is not a resentencing proceeding, but rather "represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines," without any possibility of increase in a sentence. *Id.* at 828. The Court stressed the opening passage of 18 U.S.C. § 3582(c) – "The court may not modify a term of imprisonment once it has been imposed except that" – and the specific language of Section 3582(c)(2), which gives a court power to "reduce" a sentence, not increase it. For this and numerous other reasons – that the provision applies only to a limited class of prisoners, that Federal Rule of Criminal Procedure 43(b)(4) does not require the defendant's presence at any proceeding under Section 3582(c), and that Congress explicitly gave the Sentencing Commission a significant role in determining eligibility – *Dillon* held that the *Booker* rule is inapplicable and the Commission's relevant policy statement is controlling.

Every consideration identified in *Dillon* appears here. A motion for compassionate release rests on an act of Congressional lenity. It appears under the same prefatory language of Section 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except that"), and explicitly refers to an action to "reduce" a sentence. It applies only to a limited class of prisoners, and does not warrant a full resentencing procedure. There is no basis for any conclusion other than that the statutory language is binding: a court may reduce a sentence based on "extraordinary and compelling reasons" only if "such

- 10 -

a reduction is consistent with applicable policy statements issued by the

Sentencing Commission."

Thus, the defendant's position, that Congress aimed to afford courts

discretion to determine in individual cases whether there is a basis for a sentence

reduction, simply ignores the text of the actual statutes, not to mention the *Dillon*

decision.[3]

The defendant cites S. Rep No. 98-225 (1983), Mtn. 7-8, but it does not

contradict the statutes (not that it could). This Senate report was issued in

relation to the Comprehensive Crime Control Act of 1984, in which the

compassionate release provision was adopted. At the time, Congress endeavored

to abolish indeterminate sentencing and the related parole system, determining

that fairness required consistent and predictable sentencing of like offenders. The

report observed:

> The Committee believes that there may be unusual cases in which an
> eventual reduction in the length of a term of imprisonment is justified by

---

[3] While some defendants have raised the rule of lenity in this context, it is inapplicable. The rule of lenity applies only to "interpretations of the substantive ambit of criminal prohibitions, [and] to the penalties they impose." *Bifulco v. United States*, 447 U.S. 381, 387 (1990). Section 3582(c)(1)(A) authorizes only a reduction of a sentence; it neither prohibits conduct nor imposes penalties. And in any event, application of the rule of lenity "requires more than a difficult interpretative question. Rather, '[t]o invoke the rule, we must conclude that there is a grievous ambiguity or uncertainty in the statute.'" *United States v. Flemming*, 617 F.3d 252, 270 (3d Cir. 2010) (citing *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) (internal quotation marks and citation omitted)). The rule of lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *Moskal v. United States*, 498 U.S. 103, 108 (1990). Here, the statutory provision is unambiguous.

changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment. The Committee believes, however, that it is unnecessary to continue the expensive and cumbersome Parole Commission to deal with the relatively small number of cases in which there may be justification for reducing a term of imprisonment. The bill, as reported, provides instead in proposed 18 U.S.C. 3583(c) for court determination, subject to consideration of Sentencing Commission standards, of the question whether there is justification for reducing a term of imprisonment in situations such as those described.

S. Rep. 98-225, at 55-56. The Committee later described "the unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner. In such a case, under subsection (c)(1)(A), the Director of the Bureau of Prisons could petition the court for a reduction in the sentence, and the court could grant a reduction if it found that the reduction was justified by 'extraordinary and compelling reasons' and was consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at 121. These statements are fully consistent with the statutes as ultimately passed, which direct courts to grant compassionate release only as consistent with the policy statement of the Sentencing Commission.

In sum, in amending Section 3582(c)(1)(A), Congress granted inmates a new procedural right: the opportunity to bring motions for compassionate release directly. In so providing, Congress did not alter the substantive criteria governing

- 12 -

motions for compassionate release, which remain subject to binding guidance of the Sentencing Commission.

**B.      The Governing Policy Statement Does Not Permit Relief Based on Disagreement with the Length of a Mandatory Sentence.**

Based on the Congressional mandate, the Sentencing Commission set forth the policy statement in Section 1B1.13 governing motions for compassionate release. In defining the extraordinary circumstances that may warrant relief, the Commission focused on medical condition, age, and family responsibilities. Application note 1 states that "extraordinary and compelling reasons exist under any of the circumstances set forth below":

(A) Medical Condition of the Defendant.--

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is--

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

- 13 -

(B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.--

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Addressing subsection (D), BOP has issued a regulation defining its own consideration of requests for compassionate release. That regulation appears at Program Statement 5050.50, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf. This program statement was amended effective January 17, 2019, following passage of the First Step Act. It replaces the previous program statement, 5050.49, CN-1. It sets forth in detail BOP's definition of the circumstances that may support a request for compassionate release, limited to the same bases identified by the Sentencing Commission: medical condition, age, and family circumstances.

Neither the policy statement nor the BOP regulation provides any basis for compassionate release based on reevaluation of the severity of the original sentence. In this case, the defendant does not set forth anything more. He asserts

that he is rehabilitated (which by itself, under 28 U.S.C. § 994(t), may not be the basis for relief), and that the original mandatory minimum sentence was too extreme as revealed by the recent statutory amendment, and imposed due to his decision to proceed to trial. This does not set forth an allowable basis for relief consistent with the Sentencing Commission's policy statement.

This is not surprising. The compassionate release statute is part of an intricate sentencing scheme. The 1984 sentencing reform of which this statute is part was animated by the Congressional determination "that sentencing in the Federal courts is characterized by unwarranted disparity and by uncertainty about the length of time offenders will serve in prison." S. Rep. 98-225, at 49. Thus, Congress created the Sentencing Commission to "provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices . . . ." 28 U.S.C. § 991(b)(1)(B). *See also Peugh v. United States*, 569 U.S. 530, 535 (2013); *United States v. Booker,* 543 U.S. 220, 264 (2005) (majority opinion of Breyer, J.); *Koon v. United States*, 518 U.S. 81, 113 (1996) ("The goal of the Sentencing Guidelines is, of course, to reduce unjustified disparities and so reach toward the evenhandedness and neutrality that are the distinguishing marks of any principled system of justice. In this respect, the Guidelines provide uniformity,

predictability, and a degree of detachment lacking in our earlier system."). Justice

Breyer, an architect of the sentencing reform effort, explained:

> The Sentencing Reform Act (SRA) has two overall objectives. *See Barber v. Thomas*, 130 S.Ct. 2499, 2505 (2010); *see also* United States Sentencing Commission, Guidelines Manual § 1A3, p. 1.2 (Nov.1987) (USSG) (addressing statutory objectives). First, it seeks greater honesty in sentencing. Instead of a parole commission and a judge trying to second-guess each other about the time an offender will actually serve in prison, the SRA tries to create a sentencing system that will require the offender actually to serve most of the sentence the judge imposes. *See Mistretta v. United States*, 488 U.S. 361, 367 (1989) ("[The SRA] makes all sentences basically determinate"). Second, the Act seeks greater fairness in sentencing through the creation of Guidelines that will increase the likelihood that two offenders who engage in roughly similar criminal behavior will receive roughly similar sentences. *See Barber, supra*, at 2505 (noting that Congress sought to achieve, in part, "increased sentencing uniformity").

*Setser v. United States*, 566 U.S. 231, 244 (2012) (Breyer, J., dissenting).

Thus, the Act calls for consistent sentencing, and provides extremely

limited grounds for later alteration of a sentence. Specifically, Section 3582(c)

prohibits a court from modifying a sentence of imprisonment except in three

limited circumstances: (1) where extraordinary and compelling reasons warrant a

reduction, § 3582(c)(1)(A); (2) where another statute or Federal Rule of Criminal

Procedure 35 expressly permits a sentence modification, § 3582(c)(1)(B); or

(3) where a defendant has been sentenced to a term of imprisonment based on a

sentencing range that was subsequently lowered by the Commission and certain

other requirements are met, § 3582(c)(2). *See also United States v. Washington*,

549 F.3d 905, 915-16 (3d Cir. 2008) (holding that a sentence may only be

modified pursuant to Section 3582(c) or Rule 35, and a district court otherwise

lacks jurisdiction to modify a previously imposed sentence; here, the district court vacated a sentence upon learning that the defendant had been prosecuted under a false name he provided, in order to conceal his full criminal history, and the Court of Appeals reversed this action as exceeding the court's jurisdiction). Under Section 3582(c), "[i]n the sentencing context, there is simply no such thing as a 'motion to reconsider' an otherwise final sentence." *United States v. Dotz*, 455 F.3d 644, 648 (6th Cir. 2006).

Accordingly, consistent with the statutory scheme, the grounds for compassionate release identified by the Commission are all based on inherently individual circumstances – health, age, and family responsibilities – and, not surprisingly, nothing remotely comparable to the propriety of statutory penalties applied to thousands of offenders.

Indeed, the remedy sought by the defendant would mark a profound alteration of the sentencing scheme carefully designed by Congress. It would afford individual judges the authority to, in effect, exercise a parole power that Congress specifically acted in 1984 to abolish, or exercise a clemency function that the Constitution affords exclusively to the President. *See* U.S. Const., Art. II, § 2, cl. 1. A judge could, for instance, impose a mandatory sentence as dictated by Congress, and then after the judgment became final act to reduce it, upon a declaration that imposition of the sentence in the particular case is "extraordinary" and unwarranted. This power would inevitably result in varying determinations by different courts, demolishing the certainty and consistency in

sentencing that Congress required through passage of the Sentencing Reform Act. The suggested course would also undermine the finality of sentences, a concept "which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect." *Teague v. Lane*, 489 U.S. 288, 309 (1989).[4]

This is not hyperbole. In this case, Clausen seeks not just erasure of the mandatory minimum terms required by law at the time of conviction and sentencing, but rejection even of the statutory mandatory minimum terms required by law *today* for the same offenses. He is positing that a court may simply wait until after a sentence is final, and then simply reduce it to any extent, regardless of Congress' declarations. That is plainly incorrect, and certainly nothing in the First Step Act proclaimed anything that radical.

To be sure, Congress could have authorized sentence reductions for defendants sentenced under prior versions of Section 924(c). In Section 404 of the First Step Act, for example, Congress authorized full retroactive application of Sections 2 and 3 of the Fair Sentencing Act of 2010. But Congress decided not to extend the benefit of Section 403 of the First Step Act to defendants like the defendant, and it did not authorize use of Section 3582(c)(1)(A) to accomplish the same result. Instead, as before the First Step Act, Congress directed the

---

[4] Understanding the purpose of the Sentencing Reform Act simply negates Clausen's suggestion, Mtn. 6, that Congress meant to continue the pre-SRA law in which early termination of a sentence was more liberally available.

Sentencing Commission to identify extraordinary circumstances that may warrant compassionate release. The Commission has set forth a sensible set of reasons, focused on individual circumstances, that do not contemplate resentencing based on a reassessment of the appropriate criminal penalty for the original criminal conduct.[5]

The suggested action here, to effectively countermand Congress' determination regarding retroactive application of the First Step Act, also parts from the basic rule that Congress, not the executive or judicial branches, defines sentences. Article I, Section 8 of the United States Constitution charges Congress with setting penalties for criminal offenses. *See Mistretta v. United States*, 488 U.S. 361, 363 (1989) (citing *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 94 (1820) (identifying "the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment.")). Congress' authority in this regard extends to identifying the relative seriousness of various offenses, and "in evaluating the magnitude of the harm caused by" an offense, courts "defer to the findings made by Congress." *United States v. MacEwan*, 445 F.3d 237, 249 (3d Cir. 2006). "Whatever views may be entertained regarding severity of punishment . . . these are peculiarly questions of legislative policy."

---

[5] Likewise, it would be inappropriate for the Bureau of Prisons, in the exercise of its authority to recommend compassionate release, to assume for itself the authority to reject lengthy sentences in individual cases based on disagreement with Congressional penalty enactments.

*Dorszynski v. United States*, 418 U.S. 424, 442 (1974) (ellipsis in original, quoting *Gore v. United States*, 357 U.S. 386, 393 (1958)).

Under still-controlling law, Congress has tasked the Sentencing Commission, not the courts, with determining what constitutes an "extraordinary and compelling reason" that can justify compassionate release. In a detailed and still-controlling policy statement, the Commission has set forth four categories of reasons that qualify. The reasons that the defendant relies upon in his motion do not align with any of the reasons given by the Commission. Because of this, he is statutorily ineligible for compassionate release.

### C.     The District Court Decisions Supporting the Defendant's Position Are Unpersuasive.

A number of district courts have agreed with the proposition that a court may now itself define the circumstances that permit compassionate release, unfettered by the Commission's policy statement, but most present limited reasoning, and none addresses the extensive arguments presented here concerning the clear statutory language. Indeed, none recognizes or addresses the significance of the Supreme Court's *Dillon* decision in addressing this issue. *See, e.g.*, *United States v. Rodriguez*, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019); *United States v. Brown*, 2019 WL 4942051, at *4 (S.D. Iowa Oct. 8, 2019); *United States v. O'Bryan*, 2020 WL 869475 (D. Kan. Feb. 21, 2020); *United*

*States v. Perez*, 2020 WL 1180719 (D. Kan. Mar. 11, 2020);[6] *United States v.
Bucci*, 2019 WL 5075964, at *1 (D. Mass. Sept. 16, 2019); *United States v.
Urkevich*, 2019 WL 6037391 (D. Neb. Nov. 14, 2019); *United States v. Beck*, 2019
WL 2716505, at *6 (M.D.N.C. June 28, 2019); *United States v. Young*, 2020 WL
1047815, at *6 (M.D. Tenn. Mar. 4, 2020); *United States v. Cantu*, 2019 WL
2498923, at *5 (S.D. Tex. June 17, 2019); *United States v. Maumau*, 2020 WL
806121 (D. Utah Feb. 18, 2020); *United States v. Redd*, 2020 WL 1248493 (E.D.
Va. Mar. 16, 2020).

Other courts disagree, and concur with the government's view that the
policy statement remains controlling. *See, e.g.*, *United States v. Mollica*, 2020
WL 1914956, at *4 (N.D. Ala. Apr. 20, 2020); *United States v. Lynn*, 2019 WL
3805349, at *3-4 (S.D. Ala. Aug. 13, 2019); *United States v. Shields*, 2019 WL
2359231, at *4 (N.D. Cal. June 4, 2019); *United States v. Willingham*, 2019 WL
6733028, at *2 (S.D. Ga. Dec. 10, 2019) (disagreeing with decisions cited above,
stating, "[t]hese cases, however, rest upon a faulty premise that the First Step Act
somehow rendered the Sentencing Commission's policy statement an
inappropriate expression of policy. This interpretation, and it appears to be an

---

[6] *Perez* granted compassionate release both because the sentence was
imposed under mandatory guidelines, and because the defendant meets the BOP
criteria for relief for older inmates. In that case, the government stated only that
the availability of relief was unsettled, while acknowledging that the "majority"
view permitted the court to replace BOP in determining eligibility for
compassionate release. The government did not present the thorough arguments
offered here. Indeed, in most of the adverse decisions cited here, the government
regrettably did not present all of the arguments stated here.

interpretation gleaned primarily from the salutary purpose expressed in the title of Section 603(b) of the First Step Act, contravenes express Congressional intent that the Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision"); *United States v. McGraw*, 2019 WL 2059488, *2 (S.D. Ind. 2019); *United States v. Neubert*, 2020 WL 1285624, at *3 (S.D. Ind. Mar. 17, 2020) ("a reduction under § 3582(c)(1)(A) is not warranted because the disparity between Mr. Neubert's actual sentence and the one he would receive if he committed his crimes today is not an 'extraordinary and compelling circumstance.' Instead, it is what the plain language of § 403 [of the First Step Act] requires."); *United States v. Schmitt*, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8, 2020); *United States v. Washington*, 2019 WL 6220984, at *2 (E.D. Ky. Nov. 21, 2019); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019);[7] *United States v. Willis*, 382 F. Supp. 3d

---

[7] In *Fox*, the district court stated, "I agree with the courts that have said that the Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive given the statutory change." 2019 WL 3046086, at *3. But the court then evaluated, and denied, the defendant's request on the basis of the considerations outlined in the policy statement, declining to consider the defendant's argument that changes in sentencing law and disparate treatment of other offenders presented extraordinary circumstances warranting relief. The court reasoned: "I conclude that those other extraordinary and compelling reasons should be comparable or analogous to what the Commission has already articulated as criteria for compassionate release. Despite Fox's understandable frustration over the unfairness he perceives in others getting sentencing benefits while he does not, the compassionate release provision is not an end-run around the Commission's authority to make certain Guideline changes not retroactive or Congress's decision to reduce sentences for some crimes but not others, or a

1185, 1187 (D.N.M. 2019); *United States v. Ebbers*, 2020 WL 91399, *4 (S.D.N.Y.

Jan. 8, 2020); *United States v. Overcash*, 2019 WL 1472104, at *2 (W.D.N.C.

Apr. 3, 2019); *United States v. Hunter*, 2020 U.S. Dist. LEXIS 4305, at *5 (S.D.

Ohio Jan. 9, 2020); *United States v. York*, 2019 WL 3241166, at *4 (E.D. Tenn.

July 18, 2019); *United States v. Pitts*, 2020 WL 1676365, at *7 (W.D. Va. Apr. 6,

2020) (refusing to commit an inappropriate "end run" around the non-

retroactivity of Section 403 of the First Step Act, that amended 924(c) penalties).

*Cf. United States v. Rivernider*, 2019 WL 3816671, at *3 (D. Conn. Aug. 14, 2019)

("In support of his claim under subdivision (D), the defendant makes a variety of

assertions: his convictions and sentence are unlawful, he has served substantially

more time in prison than he expected to serve when he pleaded guilty, he has

been mistreated and treated unfairly, and his minor children are suffering in his

absence. None of these factors is comparable to the Commission's criteria for

compassionate release.").

     The first appellate decision on the issue agreed with the government's view.

In *United States v. Saldana*, -- F. App'x --, 2020 WL 1486892 (10th Cir. Mar. 26,

2020) (not precedential), the panel held that compassionate release is not

available based on a change in sentencing law that would produce a lower

sentence today. The panel stated: "neither the § 1B1.13 commentary nor BOP

Program Statement 5050.50 identify post-sentencing developments in case law

---

means to redress perceived disparities with other sentenced defendants." *Id.* In
other words, this case as well stands in opposition to the relief sought here.

as an 'extraordinary and compelling reason' warranting a sentence reduction."
Accordingly, the court held, a court lacks jurisdiction to grant compassionate
release on this basis.

In many of the cases in which a district court has articulated a power to
consider circumstances not identified by the Sentencing Commission, the relief
granted was in fact based on the traditional considerations of health, age, and
family circumstances that are identified by the Commission as possible
extraordinary circumstances. *See Cantu*, 2019 WL 2498923, at *1 (identifying the
defendant as "elderly," and the government agreed that home confinement was
warranted); *Beck*, 2019 WL 2716505 (relief granted on the basis of invasive
cancer and BOP's purported history of indifference to the defendant's medical
condition); *Rodriguez*, 2019 WL 6311388 (defendant's claim was exclusively
based on medical condition, and the court upon analysis denied the motion);
*Bucci*, 2019 WL 5075964 (defendant is sole available caregiver for ailing mother);
*Schmitt*, 2020 WL 96904 (defendant suffered from metastatic breast cancer);
*United States v. Cantu-Rivera*, 2019 WL 2578272 (S.D. Tex. June 24, 2019)
(although the court suggested that the policy statement is not binding, its grant of
release was nonetheless based on the defendant's advanced age and significant
health issues, as well as the fact that he would receive a lower sentence under
current law).

However, many courts in recent months have granted the relief the
defendant seeks here, and reduced sentences based on pre-First Step Act 924(c)

charges. Besides the decisions to that effect cited above in *O'Bryan*, 2020 WL 869475; *Urkevich*, 2019 WL 6037391; *Young*, 2020 WL 1047815; *Maumau*, 2020 WL 806121; and *Redd*, 2020 WL 1248493, other such decisions include *United States v. Wade*, 2020 WL 1864906 (C.D. Cal. Apr. 13, 2020); *United States v. Chan*, 2020 WL 1527895 (N.D. Cal. Mar. 31, 2020) (indicative ruling pending completion of appeal); *United States v. Almontes*, 2020 WL 1812713 (D. Conn. Apr. 9, 2020); *United States v. Decator*, 2020 WL 1676219 (D. Md. Apr. 6, 2020); *United States v. Haynes*, 2020 WL 1941478 (E.D.N.Y. Apr. 22, 2020); *United States v. Marks*, 2020 WL 1908911, at *7 (W.D.N.Y. Apr. 20, 2020); and *United States v. McPherson*, 2020 WL 1862596 (W.D. Wash. Apr. 14, 2020).[8] These recent decisions mostly rely on earlier ones to justify relief, without tackling the significant and indeed insuperable barriers explained by the government to this Court.

　　To the extent that courts have perceived expanded judicial authority in considering motions for compassionate release, those decisions are without legal

---

[8]　*Young* held that relief was warranted in light of the change in 924(c) penalties, in combination with the defendant's medical condition and rehabilitation, even though his medical condition and rehabilitation by themselves would not warrant relief. 2020 WL 1047815.

　　In *Brown,* 2019 WL 4942051, the Iowa district court suggested that relief may be afforded based on the length of 924(c) sentences, but denied the request, as the defendant had not yet completed the sentence that would be imposed under current law; the court instead suggested that the Department of Justice support a request for executive commutation of the sentence.

basis. *Cantu* presents one of the more extensive discussions, and is most frequently cited. It devotes most of the pertinent discussion, 2019 WL 2498923, at *3-5, to the indisputable proposition that the portion of the guideline commentary that conditions relief on a BOP motion, consistent with the earlier statute, is no longer operative, as a policy statement may not conflict with a governing statute.[9] From that premise, however, *Cantu* unjustifiably concludes "that when a defendant brings a motion for a sentence reduction under the amended [Section 3582(c)(1)(A)], the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief." *Id.* at *5.

In support, *Cantu* relies first on the proposition that Congress aimed to increase the award of compassionate release, and the fact that the title of Section 603(b) of the First Step Act is "Increasing the Use and Transparency of Compassionate Release." *See also* Mtn. 13. But as the court explained in its lengthy rejection of *Cantu* in *United States v. Lynn*, 2019 WL 3805349, at *3-4

---

[9] Application note 4 of Section 1B1.13, which states the prior requirement of a BOP motion, has not been amended in light of the First Step Act, as the Commission currently lacks a quorum.

Application note 4 also encourages BOP to be liberal in filing such motions and states that a "court is in a unique position to determine whether the circumstances warrant a reduction." But this language does not empower a court to ignore the policy statement's substantive directives and adopt a freestanding power to declare what circumstances may justify a sentence reduction. To the contrary, the note restates the court's obligation to adhere to consideration of the circumstances identified by the Commission.

(S.D. Ala. Aug. 13, 2019), there is much in the First Step Act that expands the availability of compassionate release, from the authorization of direct defense requests to a sentencing court, to provisions requiring notification and assistance to prisoners who may prepare requests.[10] Nothing in the Act, however, revises the explicit directives in Sections 994(t) and 3582(c)(1)(A) requiring compliance with the Sentencing Commission's policy statement. And as *Lynn* correctly concluded, "[i]f the policy statement needs tweaking in light of Section 603(b), that tweaking must be accomplished by the Commission, not by the courts." 2019 WL 3805349, at *4; *see id.* at *4 n.5 (noting it is not "easy to believe that Congress, which plainly desired the Commission to pour content into 'extraordinary and compelling reasons,' intended to eliminate that content by allowing defendants to move for compassionate release.'").

Next, *Cantu* relies on application note 1(D), which authorizes a reduction if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." 2019

---

[10]  Besides allowing direct defense motions to the court, removing BOP as the gatekeeper, the First Step Act added subsection (d) to Section 3582, imposing enhanced requirements on BOP to notify prisoners of their right to seek compassionate release, with particular requirements (including mandates that BOP assist certain prisoners in preparing motions) where the inmate is terminally ill or suffers from a physical or mental impairment limiting the ability to prepare a motion. Additionally, the First Step Act added subsection (e), which requires a report by BOP to Congress in three years regarding the consideration of compassionate release motions.

WL 2498923, at *4-5. Because the BOP is no longer the "sole determiner of what constitutes an extraordinary and compelling reason," *Cantu* suggests, application note 1(D) "is not applicable when a defendant requests relief under § 3582(c)(1)(A)," and the district court, rather than the BOP, now may identify extraordinary and compelling reasons warranting a sentence reduction other than those set forth elsewhere in the policy statement. *Id.* Neither conclusion follows. First, even where a defendant moves for compassionate release, it remains sensible to permit BOP to use its expertise to identify additional extraordinary circumstances warranting compassionate release, whether specific to the defendant or applicable generally, as set forth in the program statement. And second, even if application note 1(D) does not apply where a defendant moves for compassionate release, *Cantu* does not explain how that note or any other portion of Section 1B1.13 grants courts unfettered authority to determine what constitutes an extraordinary and compelling reason untethered to those set forth elsewhere in the policy statement. In other words, even after the First Step Act, Congress has "left the task of fleshing out the universe of extraordinary and compelling reasons to the Commission, not the judiciary. The Court is not freed by congressional silence but bound by Commission policy statements that Congress has expressly required the courts to follow." *Lynn*, 2019 WL 3805349, at *5. *See United States v. Ebbers*, 2020 WL 91399, *4 (S.D.N.Y. Jan. 8, 2020) ("Congress in fact only expanded access to the courts; it did not change the standard.").

In granting relief in *United States v. Maumau*, 2020 WL 806121 (D. Utah Feb. 18, 2020), the court took a different tack, stating:

> The court briefly notes that, in reaching this conclusion, its reasoning is slightly different from some of the other district courts cited above. A few of those cases frame the First Step Act as shifting discretion from the Bureau of Prisons Director to the district courts. *See, e.g., Fox*, 2019 WL 3046086 at *3 ("I treat the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts."); *Brown*, 2019 WL 4942051 at *4 (same). But in this court's view, the district courts have always had the discretion to determine what counts as compelling and extraordinary. The courts have never been a rubber stamp for compassionate release decisions made by the Bureau of Prisons. . . . The key change made by the First Step Act is not a redistribution of discretion, but the removal of the Director's role as a gatekeeper.

*Maumau*, 2020 WL 806121, at *4 n.5.

But *Maumau*, like all the decisions in agreement with it, entirely ignores the statutory command that, when exercising the discretion it possesses, a district court may only grant a reduction that "is consistent with applicable policy statements issued by the Sentencing Commission." *Maumau* never addresses that provision, or the Supreme Court's interpretation of such language in *Dillon*. It is because of that provision that a court cannot grant relief based solely on disagreement with the length of a sentence, or based on application of an otherwise non-retroactive change in sentencing law, as the Sentencing Commission has not authorized any reduction on such bases.[11]

---

[11]  Rather, these adverse decisions not only ignore *Dillon* completely, but also, in several cases, expressly state, erroneously, that this particular guideline statement is advisory due to *Booker*. *See, e.g., Haynes*, 2020 WL 1941478 at *12 ("*Booker* establishes that the Guidelines and their commentary are unquestionably not binding on the Courts.").

Finally, *United States v. Rodriguez*, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020), posited that there is no "applicable" policy statement to obey, because the removal of the requirement of a BOP motion rendered the current policy statement obsolete. *Id.* at *4. But whatever the status of the policy statement, the fact remains that Congress explicitly directed the Sentencing Commission, not courts, to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The First Step Act did not modify that exclusive delegation of authority, under which the Commission alone may define extraordinary and compelling reasons in the first instance. And in any event, the present application note is not obsolete; the definition of "extraordinary and compelling reasons" is not altered in any respect by the removal of the BOP motion requirement, and remains applicable.

*Rodriguez* further opined that denying courts the opportunity to define qualifying circumstances would effectively narrow the available bases for relief in cases in which BOP never assesses an inmate's request for compassionate release. 2020 WL 1627331, at *5. The court stated that because paragraph (D) of the application note allows BOP to define additional circumstances for compassionate release, an inmate would be prejudiced if BOP did not promptly assess the inmate's request and a court could not itself identify novel grounds for relief. *Id.* But as explained above, BOP has already issued a program statement identifying the circumstances it considers extraordinary, satisfying the purpose of

paragraph (D). Nothing prevents a court, after the 30-day review period has ended, from granting compassionate release on the basis of grounds described in either the guideline policy statement or in the BOP program statement, which ensures that all inmates are subject to the same criteria.[12]

As stated, the defendant's suggestion could severely undermine the plain goals of the Sentencing Reform Act to reduce disparity in sentencing and to afford offenders, victims, and the public a clear understanding at the time of sentencing of the actual punishment imposed. It would remove certainty in sentencing, allowing individual judges years after the fact to revise terms based on their then-determined views of the reasonableness of sentencing law. Whatever the merit of such a plan, it may only be instituted by Congress.

---

[12] Moreover, the discussion in *Rodriguez* is dictum. The defendant sought relief both on the basis of the length of his sentence and his vulnerability to COVID-19. Although Rodriguez argued that the court could grant compassionate release based on his assessment of the different way his case would be charged and sentenced under current law, the court did not accept this basis for relief. *Id.* at *10 n.32 ("I do not find the purported changes in Department of Justice (DOJ) policy to be extraordinary and compelling reasons. Whether or not this could be an appropriate basis for compassionate release, Mr. Rodriguez has not demonstrated that he would be charged differently today."). As to Rodriguez's medical claim for relief, the government never suggested that, under the policy statement, exposure to COVID-19 of a vulnerable inmate could not be a basis for compassionate release. To the contrary, in numerous cases currently being litigated, the government acknowledges that a chronic condition or characteristic that places a defendant at heightened risk of adverse outcomes based on COVID-19 may qualify as a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of the correctional facility." U.S.S.G. § 1B1.13.

And indeed, the decisions we criticize here are ushering in a new era, in which some courts are incorrectly assuming a sweeping parole power that Congress never declared, certainly not in the compassionate release statute. In *Marks*, for instance, the district court stated, "I recognize that the Court does not sit as a super parole board. The Court has no inherent power to grant clemency to previously sentenced defendants, whether based on their good conduct in prison or for any other reasons, no matter how compelling those reasons might seem." *United States v. Marks*, 2020 WL 1908911, at *16 (W.D.N.Y. Apr. 20, 2020). The court then proceeded to do exactly that, declaring that "Congress has expanded courts' powers to modify defendants' sentences." *Id.* That expansion is not expressed anywhere in the First Step Act, which, as relevant here, merely authorized inmates to petition for compassionate release directly, subject to the terms set by the Sentencing Commission.

Other recent cases, outside the context of stacked 924(c) sentences, illustrate what is at stake. In *United States v. Millan*, 2020 WL 1674058 (S.D.N.Y. Apr. 6, 2020), the court relied on this newly declared authority under the compassionate release statute, and released a defendant after he served 28 years of a life sentence for drug and firearm crimes. The court summarized: "Mr. Millan's extraordinary rehabilitation, together with his remorse and contrition, his conduct as model prisoner and man of extraordinary character, his leadership in the religious community at FCI Fairton, his dedication to work with at-risk youth and suicide prevention, and the support of BOP staff at FCI Fairton,

including their opinion that if released, Mr. Millan would be a productive member of society and no danger to others, and the sentencing disparity that would result from further incarceration all constitute extraordinary and compelling reasons justifying a reduction in sentence." *Id.* at \*15. In other words, just what the defendant seeks in this case: a return of parole and indeterminate sentencing that was abolished in the Sentencing Reform Act.

Likewise, in *United States v. Reyes*, 2020 WL 1663129 (N.D. Ill. Apr. 3, 2020), the court reduced a 300-month sentence imposed for robbery and firearm offenses, to time served of 180 months, based on factors not addressed in the policy statement: the length of the sentence, the defendant's rehabilitation, and the fact that he can assist with the care of an aunt who is suffering from cancer (but is not one of the relations described in the policy statement as allowing compassionate release based on family circumstances). This court as well relied on the incorrect notion that a court itself may identify "extraordinary and compelling circumstances" and proceed to alter a long-final sentence. We request that this Court not follow these mistaken rulings.[13]

---

[13] On May 7, 2020 (docket no. 269), Clausen presented a motion for expedited consideration of his compassionate release request, in which he stated a new ground for relief: as a person diagnosed with latent tuberculosis, he faces the possibility of an adverse outcome should he contract COVID-19. Clausen is held at FCI McKean, which at present has no identified case of COVID-19 among inmates and staff.

This request should not be considered at this time for two reasons. First, a request for compassionate release must first be made to the warden, and an inmate is not permitted to make the request in court until he exhausts

## III.   Conclusion.

The efforts at rehabilitation described in Clausen's motion are

commendable, and his sentence is unquestionably severe. On that basis, he may

one day earn relief from his current sentence, either through executive clemency

or further legislative enactment. Congress or the President may well consider, or

---

administrative remedies, or 30 days pass after presentation of the request to the warden, whichever happens earlier. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The purpose of this statutory requirement, stated in 18 U.S.C. § 3582(c)(1)(A)(i), is to permit the Bureau of Prisons to apply its expertise in evaluating a request. Accordingly, the requirement is not satisfied by the earlier presentation of a different request that stated different grounds for relief. *See, e.g.*, *United States v. Jenkins*, 2020 WL 1872568, at *1 (D. Neb. Apr. 14, 2020) ("the Court does not view the administrative exhaustion of an initial request for compassionate release as serving to discharge that requirement for subsequent requests based on different evidence and argument. Simply put, the Court cannot consider a motion for compassionate release that is based on evidence or arguments that weren't presented to the Bureau of Prisons first."); *United States v. Pitt*, 2020 WL 2098272 (M.D. Pa. May 1, 2020); *United States v. Valenta*, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020). Accordingly, on May 8, 2020, upon receiving Clausen's latest motion, the undersigned contacted his counsel to suggest that he may wish to initiate a request to the warden.

Second, it does not appear that compassionate release here may be based on Clausen's condition. As noted above, the pertinent guideline defines an extraordinary medical condition as one that substantially diminished the inmate's ability to provide self-care. Clausen appears to be in good health. Estimates are that his condition of latent tuberculosis is shared by 5% of the U.S. population, and perhaps a quarter of the world's population. It has not been identified by the CDC as a risk factor for an adverse outcome from COVID-19. (In the case on which Clausen relies, *United States v. Atwi*, 2020 WL 1910152 (E.D. Mich. Apr. 20, 2020), the defendant faced treatment to prevent latent TB from becoming active TB. Further, he was serving a sentence of only four months for food stamp fraud, a dramatically different situation from that presented here.)

The government reserves the right to respond further to this issue should it be timely presented.

allow the sentencing court to consider, Clausen's efforts at reform, as well as the nature of his offenses, how the case would be charged and sentenced under current practices, and/or any other information deemed pertinent by the legislature or the executive. But any such relief must be authorized by law, and at present, no provision countermands the plain Congressional directive against retroactive application of Section 403 of the First Step Act of 2018, or the limitations on compassionate release dictated by the Sentencing Commission. Clausen does not set forth any basis for compassionate release authorized by law, and his motion for relief should therefore be denied.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney


*/s Robert A. Zauzmer*
ROBERT ZAUZMER
Assistant United States Attorney
Chief of Appeals

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the attached pleading was

served by electronic filing upon:

> Kyle Singhal, Esq.
> Shon Hopwood, Esq.
> Ann Marie Hopwood, Esq.
> Law Office of Shon Hopwood PLLC
> 3106 15th Street, NE
> Washington, DC  20017

*/s Robert A. Zauzmer*
ROBERT ZAUZMER
Assistant United States Attorney

Dated: May 15, 2020.