IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ADAM BENTLEY CLAUSEN,<br><br>    *Defendant.* | CRIMINAL ACTION<br><br>NO. 00-291-2 |

**PAPPERT, J.**                                        July 24, 2020

## MEMORANDUM

  Adam Clausen was sentenced to approximately 213 years in prison after a jury convicted him of nine counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951, nine counts of conspiracy to commit Hobbs Act robbery in violation of the same statute, and nine counts of using a firearm in the commission of each count in violation of 18 U.S.C. § 924(c). Having served over twenty years in jail, Clausen now seeks a reduction of his sentence to time served and a period of supervision under the "compassionate release" statute, 18 U.S.C. § 3582(c)(1)(A). The Government opposes the Motion. After careful consideration of the law, the parties' extensive briefing and Clausen's appendices, the Court grants the Motion in part and orders a hearing, at which time the parties may present argument supporting their positions on the extent to which the Court should reduce Clausen's sentence.

I

A

Clausen and his co-conspirators robbed several businesses in Philadelphia and New Jersey during a three-week span in February of 2000. *See United States v. Clausen*, 2005 WL 846198, at *1 (E.D. Pa. Apr. 12, 2005) (denying Clausen's § 2255 motion). The evidence presented at trial established that a firearm was used during each of the robberies. *See id.* at *2–4. In at least three of the heists, a gun was discharged, though Clausen never fired his weapon. *See id.*[1]

The Court sentenced Clausen to ninety-seven months of imprisonment for the Hobbs Act counts and a "stacked" mandatory-minimum sentence of 205 years to run consecutively to the Hobbs Act sentence, as then required by 18 U.S.C. § 924(c)(1).[2] (Judgment, ECF No. 140.) His current release date is November 17, 2181. *See* (BOP Inmate Locator, available at http://www.bop.gov/inmateloc (last accessed July 20, 2020)).

At the time of Clausen's sentencing, a conviction on a § 924(c) charge imposed a mandatory-minimum five-year sentence for the first § 924(c) offense, followed by mandatory-minimum twenty-five-year sentences for each additional § 924(c) conviction. The "stacking" of the sentences resulted in a term of imprisonment that was "not necessarily commensurate with the underlying offense." *United States v. Defendant(s)*, 2020 WL 1864906, at *3 (C.D. Cal. Apr. 13, 2020) (citing U.S. Sentencing Comm'n,

---

[1] The facts presented at trial are described in detail in *United States v. Clausen*, 2005 WL 846198 (E.D. Pa. Apr. 12, 2005).

[2] Judge Kelly sentenced Clausen. The case was reassigned to this Court upon Judge Kelly's retirement.

2

*Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* (2011)).

Congress has since amended these harsh sentencing requirements. *See* First Step Act of 2018, Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221–22. Specifically, section 403 of the First Step Act amended portions of § 924(c) so that the heightened mandatory-minimum terms for subsequent convictions are only applicable after a "prior conviction under this subsection has become final." 18 U.S.C. § 924(c)(1)(C). In other words, the First Step Act reduced the mandatory-minimum sentence for first-time offenders who commit multiple § 924(c) offenses charged in the same indictment. Thus, if Clausen were sentenced today, he would face a mandatory-minimum sentence of five years (using, carrying, or possessing a firearm), seven years (brandishing a firearm) or ten years (discharging a firearm) for each count.[3] *Id.* § 924(c)(1)(A)(i)–(iii).

Congress, however, did not apply this change retroactively. *See* First Step Act § 403(b) ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for that offense has not been imposed as of such date of enactment."); *United States v. Hodge*, 948 F.3d 160 (3d Cir. 2020).

B

Clausen is currently serving his sentence at the Federal Correctional Institution McKean. *See* (Def.'s Mot. 2, ECF No. 267). During Clausen's period of incarceration, he has: (1) completed over one-hundred BOP educational programs; (2) received a

---

[3] The Government represents that if Clausen were sentenced today, he would receive at least forty-five years of imprisonment for the § 924(c) counts and likely a total consecutive sentence in excess of sixty years. *See* (Gov't Resp. 4 & n.3, ECF No. 271).

certification as an offender work force development specialist; (3) created and facilitated prison reentry programs that have been added to the BOP's course catalog; (4) coordinated reentry summits and seminars at FCI McKean; (5) conducted presentations about criminal justice reform with academics and government officials; (6) obtained certification as a life coach through the Institute for Life Coach Training; (7) co-designed and facilitated victim impact courts with an academic member at the University of Pittsburgh; and (8) taught educational courses to other prisoners.  *See* (Def.'s Mot., App., at 4–15; 49–50, ECF No. 267-1).  Clausen has also maintained a blemish-free disciplinary record since 2003.  (App. 10–11.)  The letters of recommendation submitted on Clausen's behalf—including many from employees within the Department of Justice—are also telling of his rehabilitation.  *See* (App. 16–48).  For example, FCI McKean's former warden wrote a four-page letter stating that Clausen "serves as a mentor to numerous individuals," has "exceptional job performance," and his "efforts to transform his life to a positive, productive one [are] sincere."  *See* (App. 23–26).

On May 17, 2019, Clausen filed an administrative request with FCI McKean Warden Bradley Trate seeking compassionate release based on Clausen's rehabilitative progress while incarcerated.  *See* (App. 1).  Warden Trate denied the request on May 28, 2019, stating that Clausen did not meet the requirements for compassionate release set forth in the BOP Program Statement 5050.50.  *See* (App. 3).  Clausen now moves this Court for compassionate release, arguing that extraordinary and compelling reasons— namely, his grossly excessive stacked sentence under § 924(c), his effective life sentence

4

as a penalty for exercising his right to a jury trial and his remarkable record of rehabilitation—warrant a reduction of his sentence. *See generally* (Def.'s Mot.).

Clausen also filed a Motion to Expedite Consideration of his Motion for Compassionate Release, in which he adds the additional ground that his latent tuberculosis would render him vulnerable if he were to become infected with COVID-19. (Def.'s Mot. to Expedite 5–7, ECF No. 269.) Clausen's medical records submitted in connection with this Motion show that he was identified as a tuberculosis carrier in 1986. (Def.'s Mot. to Expedite, App., at 3, ECF No. 269-1.) While incarcerated, he received a chest X-ray in August of 2009, but his medical record states "Latent TB Treated." (*Id.* at 1.)

In its Response, the Government questioned whether Clausen exhausted his administrative remedies for this second compassionate release request, which he bases on an entirely new argument: his health risks and COVID-19. (Gov't Resp. 33 n.3, ECF No. 271.) *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (explaining defendant may not seek compassionate release from court until he has exhausted administrative remedies, or thirty days pass after presenting the request to the warden, whichever happens earlier); *United States v. Valenta*, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020) ("To properly exhaust administrative remedies, therefore, the administrative complaint must raise the *same* claims asserted in the federal court filing." (emphasis added)).

On June 19, 2020, the Court ordered the parties to submit letter briefs addressing whether Clausen exhausted, as required by 18 U.S.C. § 3582(c)(1)(A), his administrative remedies with respect to each of the four arguments raised in his

5

Motions (ECF Nos. 267 & 269): rehabilitation, sentence stacking, trial penalty, and health concerns related to COVID-19.  (Order, ECF No. 273.)  Both parties filed letter briefs, and Clausen, recognizing that he had not yet exhausted his administrative remedies for each of his four arguments, represented to the Court that he was in the process of doing so.  *See* (Def.'s Letter, ECF No. 275).  He subsequently provided updated records showing that on June 22, 2020, he submitted a compassionate release request to the Warden based on all four issues, which the Warden received and denied on June 24, 2020.  *See* (Def.'s Suppl. Letter 3–7, ECF No. 276).

The Government acknowledges that Clausen's "sentence is unquestionably severe" and that his "efforts at rehabilitation . . . are commendable," but it nonetheless contends that these reasons do not establish a basis for a reduced sentence authorized by law.  (Gov't Resp. 34–35.)

II

A

A sentence of imprisonment may be modified by a district court in limited circumstances.  *Dillon v. United* States, 560 U.S. 817, 824 (2010).  Under 18 U.S.C. § 3582(c)(1)(A), a district court may reduce a defendant's sentence if the court finds that (1) "extraordinary and compelling reasons warrant such a reduction"; (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the sentencing factors set forth in § 3553(a), to the extent they are applicable, warrant a reduction.

In 2018, Congress passed and the President signed into law the First Step Act, which ushered in criminal-justice reform and "amend[ed] numerous portions of the U.S.

Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, *The First Step Act of 2018: An Overview* 1 (2019)). As part of those efforts, Congress amended the compassionate release statute by adding a provision that allows defendants to seek relief directly from the courts by filing motions for compassionate release. 18 U.S.C. § 3582(c)(1)(A). Prior to the passage of the First Step Act, only the Director of the Bureau of Prisons could file such a motion on a defendant's behalf. This change gives district courts "the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner." *United States v. Young*, --- F. Supp. 3d ---, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020).

B

Before filing a motion with the Court, a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Clausen has now done so. The attachments to his July 14, 2020 supplemental letter show that on June 22, 2020, he requested compassionate release from the Warden at FCI McKean based on all four reasons raised his Motions. (Def.'s Suppl. Letter 4–6.) Warden Trate received and denied the request on June 24, 2020. *See* (*id.* at 7). Since it has now been thirty days since "the receipt of such a request by the warden," Clausen has exhausted his administrative remedies, and the Government does not contend otherwise. *See* 18 U.S.C. § 3582(c)(1)(A).

C

Although a district court may reduce a defendant's sentence if the court finds that extraordinary and compelling reasons warrant such a reduction, Congress has never defined "extraordinary and compelling reasons" except to state that "[r]ehabilitation of the defendant *alone*" is not enough. 28 U.S.C. § 994(t) (emphasis added). Rather, Congress delegated to the United States Sentencing Commission the duty to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *Id.*

The Sentencing Commission, in turn, issued a policy statement doing so, albeit prior to the passage of the First Step Act. *See* U.S.S.G. § 1B1.13. The policy statement requires that the defendant no longer be a "danger to the safety of any other person or to the community," and in the application notes its lists specific examples of "extraordinary and compelling reasons." *See id.* These examples include (1) medical conditions of the defendant, (2) age of the defendant, and (3) family circumstances. *See id.* cmt. n.1(A)–(C). The application notes also provide a fourth "catchall provision," which states that, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the three enumerated reasons. *Id.* cmt. n.1(D).[4]

---

[4] BOP Program Statement 5050.50 identifies several nonexclusive factors to determine whether extraordinary and compelling reasons exist, including: the defendant's criminal and personal history, the nature of the offense, disciplinary infractions, length of sentence, time served, current age, age at the time of the offense, release plans, and "[w]hether release would minimize the severity of the offense." BOP Program Statement 5050.50, at 12 (2019).

8

Since the passage of the First Step Act, the Sentencing Commission—which currently lacks a quorum—has yet to update its policy statement. *See* U.S.S.G. § 1B1.13. At least one part of the policy statement clearly conflicts with the amended compassionate release statute. Specifically, the first sentence of § 1B1.13 limits the application of the policy statement to motions filed by the Director of the BOP. *See id.* ("Upon motion of the Director of the [BOP] . . . the court may reduce a term of imprisonment . . . ."); *id.* cmt. n.4 ("A reduction under this policy statement may be granted only upon motion by the Director of the [BOP] pursuant to 18 U.S.C. § 3582(c)(1)(A)."); *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (explaining "statement is at least partly anachronistic"). Clausen argues that given the recent changes to the compassionate release statute, the Sentencing Commission's policy statement is outdated and is neither applicable nor binding, such that the Court may exercise its own discretion to determine whether extraordinary and compelling reasons warrant a reduced sentence.

Because "the Sentencing Commission 'never harmonized its policy statements with the [First Step Act],'" district courts face a "conundrum": Does the applicable policy statement for the old regime still apply to the new one? *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019) (quoting *Brown*, 411 F. Supp. 3d at 449). A majority of district courts have concluded that "[w]hile the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction." *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019); *see Young*, 2020 WL 1047815, at *6 ("[T]he dependence on the BOP to determine the existence of

an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act."); *United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019) ("[I]f the Director of the BOP were still the sole determiner of what constitutes an extraordinary and compelling reason, the amendment's allowance of defendants' own . . . motions for reduction of sentence would be to no avail.").[5]

Other courts, however, have concluded that the Sentencing Commission's policy statement remains binding and applicable, thereby preventing district courts from considering any extraordinary and compelling reasons beyond those listed in subsections (A)–(C) of Application Note 1. *See, e.g.*, *United States v. Lynn*, 2019 WL 3805349, at *2–5 (S.D. Ala. Aug. 13, 2019) ("If the policy statement needs tweaking . . . that tweaking must be accomplished by the Commission, not by the courts.").[6] To date, no court of appeals has addressed this issue.[7]

---

[5] *See also United States v. Avery*, 2020 WL 3167579 (W.D. Tenn. June 9, 2020); *United States v. Somerville*, 2020 WL 2781585 (W.D. Pa. May 29, 2020); *United States v. Haynes*, --- F. Supp. 3d ---, 2020 WL 1941478 (E.D.N.Y. Apr. 22, 2020); *United States v. Rodriguez*, --- F. Supp. 3d ---, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020); *United States v. Redd*, --- F. Supp. 3d ---, 2020 WL 1248493 (E.D. Va. Mar. 16, 2020); *United States v. Maumau*, 2020 WL 806121 (D. Utah Feb. 18, 2020); *United States v. Urkevich*, 2019 WL 6037391 (D. Neb. Nov. 14, 2019); *United States v. Fox*, 2019 WL 3046086 (D. Me. July 11, 2019).

[6] *See also United States v. Rollins*, 2020 WL 3077593 (N.D. Ill. June 10, 2020); *United States v. Garcia*, --- F. Supp. 3d ---, 2020 WL 2039227 (C.D. Ill. Apr. 28, 2020); *United States v. Mollica*, 2020 WL 1914956 (N.D. Ala. Apr. 20, 2020), *appeal docketed*, No. 20-11706 (11th Cir. May 4, 2020); *United States v. Willingham*, 2019 WL 6733028 (S.D. Ga. Dec. 10, 2019); *United States v. Shields*, 2019 WL 2359231 (N.D. Cal. June 4, 2019).

[7] A panel of the Tenth Circuit Court of Appeals applied the Sentencing Commission's policy statement, but did so without discussing whether its contents are outdated in light of the First Step Act's amendments to the compassionate release statute. *See United States v. Saldana*, 807 F. App'x 816 (10th Cir. Mar. 26, 2020) (unpublished).

D

Although the Sentencing Commission's policy statement and application notes are generally binding, the Court may exercise its own discretion to determine whether "other reasons" constitute extraordinary and compelling reasons to warrant a sentence reduction. The Government points out that the policy statement at issue is binding because Congress cites it in 18 U.S.C. § 3582(c)(1)(A). *See Dillon,* 560 U.S. at 827–30 (deciding that § 3582(c)(2)—which includes language stating "consistent with applicable policy statements issued by the Sentencing Commission"—makes those policy statements binding). But Guidelines commentary that contradicts or is inconsistent with a federal statute is not authoritative. *See Stinson v. United States*, 508 U.S. 36, 38 (1993) ("We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). In other words, "[a] court need not accept an interpretation of a policy statement that is inconsistent with [the First Step Act]." *Avery*, 2020 WL 3167579, at *5; *United States v. Adeyemi*, 2020 WL 3642478, at *12–14 (E.D. Pa. July 6, 2020) (providing extensive discussion and concluding *Dillon* does not preclude courts from exercising discretion to determine whether "other reasons" constitute extraordinary and compelling reasons to warrant a sentence reduction).

Language in the policy statement and its application notes is inconsistent with Congress's amendment to the compassionate release statute. *See* 18 U.S.C. § 3582(c)(1)(A). Indeed, the outdated policy statement "allocates significant discretion to the Director of the [BOP], which was consistent with the pre-First Step Act law but is

no longer appropriate, given Congress's decision to remove the Director's control over compassionate release motions." *United States v. Maumau*, 2020 WL 806121, at *3 (D. Utah Feb. 18, 2020). "Application Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement" that motions for compassionate release be sought only by the Director of the BOP. *United States v. Redd*, --- F. Supp. 3d ---, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020). As one court has explained:

> To say that the court is restricted to the four sets of circumstances set out by the Sentencing Commission would essentially nullify the fourth category as to motions brought by defendants, since the director's failure to bring a motion presumably means that the director does not believe that any extraordinary and compelling reason exists.

*United States v. Marks*, --- F. Supp. 3d ---, 2020 WL 1908911, at *5 (W.D.N.Y Apr. 20, 2020), *appeal docketed*, No. 20-1404 (2d Cir. Apr. 23, 2020).

This approach conforms to the most natural reading of the First Step Act's text and its "applicable" policy statement. Indeed, the statutory heading of the First Step Act's compassionate release amendment—"Increasing the Use and Transparency of Compassionate Release"— confirms this much. First Step Act § 603(b); *see Almendarez–Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (internal quotation marks omitted)); *Brown*, 411 F. Supp. 3d at 451 (explaining the First Step Act's heading is "especially valuable" in light of BOP's criticized history of rarely granting compassionate release petitions).

A major goal of the First Step Act was to increase the use of compassionate release. Continuing to give complete deference to the BOP to determine what "other

reasons" constitute extraordinary and compelling reasons "no longer makes sense now that the First Step Act has reduced the BOP's role." *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019). Doing so would contravene the text and defeat the purpose of the First Step Act, which explicitly permits courts to grant motions for compassionate release even when the Director of the BOP refuses to bring them. *See Maumau*, 2020 WL 806121, at *4. Thus, under the First Step Act, when a defendant files a motion for compassionate release, it is the court—not the Director of the BOP— that determines whether "other reasons" exist to warrant a sentence reduction.

### III

### A

The Court first addresses Clausen's fourth argument in support of compassionate release: his latent tuberculosis. Clausen argues that his latent tuberculosis, together with the ongoing COVID-19 pandemic, merits compassionate release. *See* (Def.'s Mot. to Expedite 4–5). He claims that this health condition "would render him vulnerable if he were to be infected with COVID-19." (*Id.* at 5.) Other than his latent tuberculosis, however, Clausen appears to be a healthy man in his mid-forties. *See* (Def.'s Mot. to Expedite, App., at 1). Moreover, the CDC website states that only "TB patients who are at least 65 years old; have respiratory compromise from their TB; or other medical conditions, including HIV and other immunocompromising conditions, are at greater risk for severe COVID-19 infection." Centers for Disease Control and Prevention, *Tuberculosis and Public Health Emergencies*, https://www.cdc.gov/tb/education/public-health-emergencies.htm (last accessed July 20, 2020). As Clausen is below the age of sixty-five and submits no evidence that he suffers

from other conditions making him immunocompromised, he does not qualify under this guidance as being at a greater risk of becoming severely infected by COVID-19.  *See United States v. Rodriguez*, 2020 WL 3447777, at *4 (E.D. Pa. June 24, 2020) (citing other cases and denying compassionate release where medical records indicated that thirty-three-year old prisoner's latent tuberculosis condition was controlled and asymptomatic).  *But see United States v. Atwi*, 2020 WL 1910152, at *5 (E.D. Mich. Apr. 20, 2020) (granting compassionate release to inmate serving four-month sentence with latent tuberculosis because it was unclear whether prison could begin treatment to prevent the latent tuberculosis from becoming active).  Without more, Clausen's latent tuberculosis does not establish an extraordinary and compelling reason warranting his immediate release.  *See Raia*, 954 F.3d at 597.

B

Clausen, however, has established extraordinary and compelling reasons to warrant a reduced sentence under 18 U.S.C. § 3582(c)(1)(A) based on a combination of other factors.  A reason is "extraordinary" when it is "[b]eyond what is usual, customary, regular, or common."  *Extraordinary*, Black's Law Dictionary (11th ed. 2019).  And a reason presents a "compelling need" when it is "so great that irreparable harm or injustice would result if it is not met."  *Compelling Need*, Black's Law Dictionary (11th ed. 2019).  Clausen's circumstances—particularly the combination of his excessive sentence and his demonstrated rehabilitation—present extraordinary and compelling reasons that justify a sentence reduction.[8]

---

[8]   Clausen argues that a third reason, which he calls the "trial penalty," also satisfies the "extraordinary and compelling reasons" standard.  (Def.'s Mot. 19–20.)  According to Clausen, he received a long term of imprisonment not because of his culpability, but because of a trial penalty: by rejecting a plea bargain and exercising his right to a jury trial, he received a sentence grossly

Although Clausen's rehabilitation alone does not qualify him for a reduced sentence as a matter of law, *see* 28 U.S.C. § 994(t), nothing prevents the Court from concluding that a combination of factors, including rehabilitation, can together establish extraordinary and compelling reasons.  *See Brown*, 411 F. Supp. 3d at 449 (noting that "rehabilitation may be considered with other factors").  Here, that combination includes both Clausen's demonstrated rehabilitation and the stacked sentence he received under 18 U.S.C. § 924(c).  The Government argues that any reliance on stacked sentencing under § 924(c) as a factor to satisfy the extraordinary and compelling reasons standard amounts to a retroactive application of the First Step Act's amendments to § 924(c)—which Congress unequivocally did not authorize.  *See* (Gov't Resp. 19, 23, 29).  That is not the case.  Indeed, "[i]t is not unreasonable for Congress to conclude that not *all* defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve *some* defendants of those sentences on a case-by-case basis" through compassionate release.  *United States v. Chan*, 2020 WL 1527895, at *6 (N.D. Cal. Mar. 31, 2020) (quoting *Maumau*, 2020 WL 806121, at *8); *see also United States v. O'Bryan*, 2020 WL 869475, at *1 (D. Kan. Feb. 21, 2020).  A number of district courts have agreed with this conclusion, finding that a defendant's rehabilitation, combined with the "drastic reduction in § 924(c) sentences with its elimination of stacking," establish extraordinary and compelling reasons to warrant a sentence reduction.  *O'Bryan*, 2020 WL 869475, at *2;

---

disproportionate to the crimes he committed.  *See* (*id.* at 19–20).  The Court is aware of no authority, and Clausen provides none, that recognizes the trial penalty as an extraordinary and compelling reason to reduce a defendant's sentence.  The Court need not explore the issue further; Clausen's lengthy sentence and rehabilitation together establish extraordinary and compelling reasons for a sentence reduction.

15

*see Defendant(s)*, 2020 WL 1864906, at *5 (explaining a combination of factors, including rehabilitation and sentence stacking under § 924(c), established extraordinary and compelling reasons); *Young*, 2020 WL 1047815, at *8 (finding the "drastic change effected by the First Step Act's amendment of § 924(c) constitutes an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), at least when considered in conjunction with" other factors); *United States v. Urkevich*, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019) ("A reduction in [defendant's] sentence is warranted by . . . the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the [§ 924(c)] crimes committed.").

C

Clausen received a sentence of approximately 213 years, 205 of which were stacked mandatory-minimum terms for his § 924(c) convictions alone. (Def.'s Mot. 17.) At Clausen's sentencing, the prosecutor acknowledged this injustice, noting that the mandatory "off the charts" term of incarceration left the Court in a "regrettable" situation, but there was nothing that could be done given the then-applicable mandatory-minimum terms and stacking requirements for § 924(c) convictions. (Def.'s Mot. 18 (quoting Mar. 30, 2001 Sent. Hr'g Tr. 7, ECF No. 190)). Had Clausen been convicted and sentenced today, his sentence would be decades shorter than that which he received.

During Clausen's period of incarceration, rather than dwelling on his *de facto* life sentence, he has demonstrated a remarkable record of rehabilitation. Clausen has spent the last twenty years of his life completing hundreds of BOP educational

programs, designing and teaching his own courses, serving as a mentor to his peers and improving himself. *See* (App. 4–15). He has maintained a clean disciplinary record since 2003 and his reentry progress report notes that "Clausen has excelled in all areas of programming and the reentry initiative. He has great rapport with staff and is very instrumental in the reentry effort." *See* (App. 8, 10–11). And the seventeen letters of recommendation from BOP employees, university professors and family members submitted on his behalf shed light on the transformation that Clausen has made while incarcerated. *See* (App. 16–48).

Based on the combination of Clausen's "off the charts" sentence—which is longer than Congress now deems warranted—and his evident personal growth and rehabilitation, the Court finds that Clausen has established extraordinary and compelling reasons that warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

IV

The Sentencing Commission's policy statement, while not binding, nonetheless offers helpful guidance and provides for granting a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Rodriguez*, 2020 WL 1627331, at *11 (quoting U.S.S.G. § 1B1.13(2)). Section 3142(g) sets out factors that courts must consider when deciding whether to release a defendant pending trial. These factors include: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence" or "involves a . . . firearm"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and

seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)–(4).

The Government does not argue that Clausen would be a danger to any other person or the community upon release. Although Clausen's criminal history—nine robbery convictions, each of which involved a firearm—is serious, these crimes occurred more than two decades ago. Nothing in Clausen's prison disciplinary record raises any concern about him having a continued propensity for violence. To the contrary, Clausen has maintained a clean record since 2003. *See* (App. 10–11). He has completed numerous educational, vocational and rehabilitative programs, assumed a role as a peer leader within FCI McKean and received written support from numerous BOP employees. *See generally* (App.). In consideration of the factors listed in § 3142(g), there is no indicia that Clausen is a danger to any other person or to the community.

V

Having determined that Clausen's sentence should be reduced, the Court must next "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Though Clausen labels his Motion as one requesting "compassionate release," courts have no obligation to reduce the sentence in a way that provides immediate release from prison. *Young*, 2020 WL 1047815, at *10. Instead, "a downward adjustment may be made even if it results in continued incarceration." *Id.*; *see Maumau*, 2020 WL 806121, at *8 (same); *Urkevich*, 2019 WL 60373791, at *4 (explaining that a reduction of sentence that does not result in immediate release is not premature and will assist the defendant and BOP in planning for the defendant's ultimate release).

The Court will schedule a hearing for the purpose of considering the relevant § 3553(a) factors and determining the appropriate sentence reduction.

An Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
