IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> ADAM BENTLEY CLAUSEN, <br><br> *Defendant.* | CRIMINAL ACTION <br> NO. 00-291-2 |

**PAPPERT, J.**  August 10, 2020

**MEMORANDUM**

I

Adam Clausen was sentenced to approximately 213 years in prison after a jury convicted him of nine counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951, nine counts of conspiracy to commit Hobbs Act robbery in violation of the same statute, and nine counts of using a firearm in the commission of each count in violation of 18 U.S.C. § 924(c). Having served over twenty years in jail, Clausen sought a reduction of his sentence under the "compassionate release" statute, 18 U.S.C. § 3582(c)(1)(A), and the Court found that the combination of Clausen's "remarkable record of rehabilitation" and his "off the charts" sentence together established extraordinary and compelling reasons to reduce his *de facto* life sentence. (ECF Nos. 277 & 278.)

The Court's July 24, 2020 Order granted Clausen's Motion in part and stated that the Court would hold a hearing to "consider the factors set forth in 18 U.S.C. § 3553(a) to determine the appropriate sentence reduction." (ECF No. 278.) The Court thereafter scheduled a telephonic hearing for August 7, 2020, at which time counsel for Clausen and the Government discussed the relevant § 3553(a) factors. (ECF No. 281.) Consistent with those factors and for the reasons that follow, the Court reduces

1

Clausen's term of imprisonment to a period of time served followed by three years of supervised release.

## II

### A

The § 3553(a) factors include: (1) the nature and circumstances of the offense; (2) the defendant's personal history and characteristics; (3) the need for a sentence that reflects the seriousness of the offense, promotes respect for the law and provides just punishment for the offense; (4) the need to afford adequate deterrence; (5) the need to protect the public from further crimes by the defendant; (6) the need to provide rehabilitative services; (7) the kinds of sentences available and the applicable sentencing guidelines; (8) the need to avoid unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct; and (9) the need to provide restitution to any victims of the offense.[1] *See* 18 U.S.C. § 3553(a)(1)–(7). Importantly, the statute also mandates that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply" with its purpose. *Id.* § 3553(a).

### B

Clausen's offenses were very serious. He and his co-conspirators robbed several businesses in Philadelphia and New Jersey during a three-week span in February of 2000. *See* (Presentence Investigation Report ("PSR") ¶¶ 6–18). A firearm was used during each of the robberies, and in at least three of the jobs, a gun was discharged, though Clausen never fired his weapon. *See* (*id.*) Clausen did, however, strike one

---

[1] When sentenced, Clausen was ordered to pay $15,000 to one of the restaurants he robbed. That restitution has been paid in full. *See* (App. 8, ECF No. 267-1; Aug. 7, 2020 Hr'g Tr. 6:9–13; 6:21–7:3).

2

victim in the head with his gun.  *See* (*id.* ¶ 15).  Although no one suffered life-threatening injuries during the short-lived crime wave, some victims were violently assaulted and undoubtedly terrorized by Clausen and his cohorts' conduct.  *See* (*id.* ¶¶ 6–18).

Clausen's underlying offense conduct must also be considered relative to the sentence he originally received and any reduced sentence he would receive.  Clausen has already spent over twenty years in prison, which has consumed a large portion of his life and represents, by all accounts, a substantial punishment that reflects the seriousness of his offenses and the need for both general and specific deterrence.[2]  *See United States v. Redd*, --- F. Supp. 3d ---, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020) (granting compassionate release and finding twenty-three-year term of incarceration for multiple armed bank robberies constituted substantial sentence that reflected seriousness of offense, need for deterrence, respect for law and just punishment).  Clausen's two decades of life spent behind bars also promotes respect for the law and provides just punishment for his crimes.

There is nothing to suggest a need to further protect the public from Clausen.  *See* 18 U.S.C. § 3553(a)(2)(C).  Indeed, in its initial Memorandum, the Court found "no indicia that Clausen is a danger to any other person or to the community." (July 24, 2020 Memorandum 18, ECF No. 277); *see* U.S.S.G. § 1B1.13(2) (explaining that the court should determine, before authorizing a reduced sentence, that the "defendant is not a danger to the safety of any other person or to the community, as provided in 18

---

[2]  At oral argument, Clausen's counsel pointed out that "[w]hen factoring in the award of good time credit, the time Mr. Clausen has served equates to a little over a 24-year sentence." (Aug. 7, 2020 Hr'g Tr. 4:6–8.)

U.S.C. § 3142(g)"). Nor does the Government contend that Clausen is, or will be, a danger to society. *See* (July 24, 2020 Memorandum 18).

As to Clausen's personal history and characteristics, the Presentence Investigation Report prepared in 2001 shows a history of criminal activity in Clausen's teenage years. At age fifteen, he was adjudicated delinquent for burglarizing a number of homes and businesses in New Jersey. (PSR ¶¶ 102, 110.) Then at age eighteen, Clausen pled guilty to two counts of robbery and burglary and was sent to state prison. (*Id.* ¶¶ 103, 110.) While out of jail but still on parole, Clausen committed the robberies for which he is currently incarcerated. *See* (*id.* ¶¶ 105, 110).

These facts, however, provide an outdated and incomplete glimpse into Clausen's personal history; they do not account for the astounding progress that he has made in the last two decades. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) ("[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing."). Indeed, evidence of his conduct and rehabilitation since being in custody "provides the most up-to-date picture" of Clausen's personal history and characteristics. *Id.* at 492.

During the past twenty years, Clausen has transformed his life into a positive, productive one. His remarkable record of rehabilitation demonstrates a commitment to self-improvement and personal growth—both for himself and his fellow inmates. Clausen has spent his time in prison completing hundreds of BOP educational programs, designing and teaching his own courses, serving as a mentor to his peers and improving himself. *See* (App. 4–15; 49–50, ECF No. 267-1). He has maintained a clean

4

disciplinary record since 2003 and his reentry progress report notes that "Clausen has excelled in all areas of programming and the reentry initiative. He has great rapport with staff and is very instrumental in the reentry effort." *See* (App. 8, 10–11). Despite his *de facto* life sentence, Clausen "continue[s] to take advantage of reentry opportunities," including enrollment in life coaching and wellness programs, his service as a reentry class facilitator and participation in college curriculum courses. *See* (*id.* at 7). As the Government's counsel accurately described during the hearing, "Mr. Clausen presents quite a remarkable story." (Aug. 7, 2020 Hr'g Tr. 25:3.)

The seventeen letters of recommendation from Department of Justice and Bureau of Prison employees, university professors and family members submitted on Clausen's behalf also shed light on the transformation that he has made while incarcerated. *See* (App. 16–48). Of these letters, ten were from DOJ or BOP employees. *See* (*id.*) Clausen's counsel, having worked on several motions for compassionate release, represented that "it is not the norm for DOJ and BOP employees to write letters of support like this." (Aug. 7, 2020 Hr'g Tr. 14:17–19.)

The former warden of FCI McKean—who has written only three letters of support during her twenty-three-year correctional career—praised Clausen in a four-page letter for being "highly respected by his peers and [for serving] as a mentor to numerous inmates." (App. 23.) She explained that she has "no reservations in validating the changes Mr. Clausen has made in his life," and that Clausen's "efforts to transform his life to a positive, productive one [are] sincere." (*Id.* at 26.) The former associate warden of FCI McKean also wrote a letter of support. *See* (*id.* at 35). She described Clausen as an "impressive individual who has dedicated his prison experience

at FCI McKean to making a positive difference," which has included "inspir[ing] many men to walk away from criminal thinking." (*Id.*)  In another telling letter, a BOP corrections treatment specialist stated that Clausen "has not let his lengthy sentence discourage him from being a productive member of society" and that his "commitment to helping other incarcerated men is unparalleled." (*Id.* at 41.)

Despite facing a 213-year sentence, Clausen has dedicated himself to encouraging and mentoring other men who are preparing to reenter society even though he may never experience that opportunity for himself.  As the Government's counsel summed up at oral argument, he has "really never seen anybody quite like Mr. Clausen in terms of the record that he has presented." (Aug. 7, 2020 Hr'g Tr. 26:12–13.)  Clausen's counsel and the Government were in full agreement that a sentence to time served would be an appropriate reduced sentence, given the facts specific to this case.  (*Id.* at 24:22–23.)

Clausen's fiancée and mother are committed to supporting him upon his release from prison, *see* (App. 29–32), and Clausen has a job waiting for him at HOPE for Prisoners in Las Vegas, Nevada, *see* (*id*. at 22).  HOPE for Prisoners is a "reentry program that assists men and women that are exiting various arenas of the judicial system to navigate the challenges that they will face during the reintegration process." (*Id.*)  The organization provides various trainings and workshops to equip formally incarcerated individuals with the resources and tools to build successful futures.  Such workshops include, among others, leadership training, financial literacy education, professional development training and technology courses.  *See Mission, Vision, and Programs*, HOPE for Prisoners, https://hopeforprisoners.org/our-programs/.  John

6

Ponder, the CEO of HOPE for Prisoners, has committed to immediately hiring Clausen as a Program Director with a starting annual salary of $65,000.  *See* (App. 22; Aug. 7, 2020 Hr'g Tr. 15:12–16:9).  Clausen's counsel and Ponder both represent that the U.S. Probation Office in the District of Nevada would be amenable to accepting Clausen to serve any required supervision in the Las Vegas region.  *See* (App. 22; Aug. 7, 2020 Hr'g Tr. 16:1–3).

Adam Clausen, through his virtually unprecedented and unmatched record, has earned this opportunity.  He has transformed himself while incarcerated and has channeled his abilities to improve the lives of other inmates.  Based on the foregoing analysis of relevant § 3553(a) factors and pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court reduces Clausen's sentence to a period of time served followed by three years of supervised release.

An appropriate Order follows.

BY THE COURT:


 ***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.
